## Case No. 16,155.

### UNITED STATES v. RICHARDSON.

[5 Cranch, C. C. 348.] 1

Circuit Court, District of Columbia. Nov. Term, 1837.

ASSAULT—WHAT CONSTITUTES.

If a man raise a club over the head of a woman within striking distance, and threaten

to strike her if she open her mouth, this is an assault in law. He has no right to impose such a condition.

Indictment for an assault upon one Susan Shelton. The evidence was that the defendant [Allison Richardson] came into the house where Mrs. Shelton was sitting at a window. He was armed with a musket and a club; and raising the club over her head in an attitude for striking, and within striking distance, said to her that if she said a word (or if she opened her mouth) he would strike her; and this without any provocation on her part.

Bradley & Hoban, for defendant, contended that this was not, in law, an assault; that there can be no assault without a present intent to strike; and his saying, "if she opened her mouth," showed that he had not such a present intent, and they cited the old case, "If it were not the assizes, I would stab you."

## Case No. 16,156.

### UNITED STATES v. RICHARDSON.
### UNITED STATES v. SWANSON.
### UNITED STATES v. SOTO.

[Hoff. Dec. 69.]

District Court, N. D. California. May 20, 1862.

MEXICAN LAND GRANT—EVIDENCE—CONCLUSIVENESS OF LOCATION.

[Where it appears that the claimants have in the most emphatic and solemn manner made their election of the three leagues granted to them, and have surveyed the same; that important interests have grown up and large expenditures been made on the faith of that election, by the purchase and improvement at great expense of land within the survey, and by settlement and improvement under the laws of the United States of lands without it; and that no objections to the location of the grant thus elected are suggested by the United States or the owners of the adjoining ranchos,—the land should be surveyed in accordance with the claimants' original survey and election.]

The rejection of the surveys of the Martinez ranchos: No. 205. Rancho El Pinole. Rancho Las Juntas. No. 87. Rancho Cañada del Hambre. No. 308.

HOFFMAN, District Judge. Objections to the surveys of these three ranchos have been filed on the part of the owners of E Pinole

and of Las Juntas. It is contended that the Rancho Cañada del Hambre has been so located as to embrace a considerable area which is clearly within the exterior limits of the Pinole and Las Juntas Ranchos without regard to the rights of election of the claimant of those two ranchos.

In behalf of the claimants of the Cañada del Hambre Rancho, it is contended—

(1) That the Del Hambre Rancho, as surveyed, does not include any lands comprised within the exterior limits of the other two ranchos, and,

(2) That the Mexican government, by granting the Cañada del Hambre to the extent of 3 leagues, ascertained and declared that there was a sobrante or overplus between the two ranchos Pinole and Las Juntas, and those two ranchos cannot now be located so as to exclude the tract between them, which has thus been granted to another. To this it is replied that the claim for the Cañada del Hambre is fraudulent, and it is contended that the claimants have a right to show that fact, notwithstanding that the validity of the grant has been affirmed by the United States tribunals; the claimants of the adjoining ranchos not having been parties to that proceeding, nor even permitted to intervene in it for the protection of their rights.

The decree in the Del Hambre case confirms to the claimants "so much of the land known at the date of the grant as the 'Cañada del Hambre,' as shall remain overplus from the ranchos of Pinole and Mr. Welsh, not to exceed three leagues after the latter shall have been duly located and surveyed by the proper officer." By the terms of this decree it is evident that those three ranchos must first be located and surveyed. In determining, then, the true location of the three leagues of the Las Juntas Rancho, it will be necessary, first, to ascertain what were the exterior limits of the tract granted; and, second, how far the right of election to the particular location of that quantity of land is modified or controlled by the alleged grant to Soto of the Cañada del Hambre. The expediente in the case of Las Juntas shows that on the 9th of June, 1834, Welsh petitioned for the place called "Las Juntas," on which he says he had resided two years, as shown by the document annexed; that he had cattle, a house, fields, etc. The "document annexed" was a previous petition to the alcalde for two leagues in the place called "Las Juntas," and an order of the alcalde, dated October 20, 1832, conceding it as a loan, subject to the approval of the government. On the margin of the petition to the governor is an order of reference to the ayuntamiento of San José and the padre of the mission for information. No report appears to have been made by either. On the 9th of February, 1844, Welsh presented a petition, in which, after referring to his unsuccessful efforts to obtain the place called "Monte del Diablo," he states that in 1832 he

obtained a loan from the alcalde of the place called "Las Juntas," which, as shown by the map, lies to the west of the tract of Juana Sanchez and of the Monte del Diablo. He therefore solicits the place which he has occupied for ten years, and, referring to the map, says it is bounded towards the north by the Arroyo del Hambre, east by the Arroyo de las Nueces, south and west by lands of Pacheco and Moraga; that it is all pasture land, has but one permanent spring, and that its greatest extent from north to south may be three leagues, and from east to west, one-half to three-fourths of a league. On the same day, Pico, alcalde of San José, certifies that the western part of Las Juntas has been occupied for 13 or 14 years by Welsh, and that it has never belonged to any other individual. That its limits are: to the northward, the Arroyo del Hambre; to the eastward, the Arroyo de las Nueces, which also divides it on the south from the place of Lorenzo Pacheco; and on the west it is bounded by Senor Moraga. On the 19th February, Jimeno, the secretary, to whom the petition was referred, reports that from October, 1832, until 1838, Welsh had occupied the land with a house and property. That he left it on account of sickness, which was also the reason why the proceedings commenced on the 9th June, 1834, to obtain the title, were stopped. He, therefore, recommends the grant, as it can injure no one, the place being surrounded by known arroyos. And he deems it unnecessary to refer to the colindantes, as the alcalde of San José has given his certificate. On the 20th February the governor makes his decree of concession, in which he describes the land as "bounded by the Arroyo de las Nueces and by that of El Hambre, without prejudice to the boundaries of Lorenzo Pacheco, Juana Sanchez, Moraga or Martinez," and orders the title to issue for two square leagues. The grant issued on the same day. It describes the land as on the decree of concession, refers to the map in the expediente, and orders the land to be measured, reserving the surplus. The decree of confirmation is for two leagues, and describes the land as bounded east by the Nueces and lands of Juana Sanchez; south, by the Nueces and lands of Lorenzo Pacheco; west, by said arroyo and lands of Moraga; and north, by the Arroyo del Hambre and lands of Ignacia Martinez.

It might seem that there could be no difficulty in ascertaining a tract of which all the boundaries are well known arroyos. On referring to the diseño, we find that the Arroyo de las Nueces is represented as rising in the sierra on the west. After following in a southerly direction for a considerable distance it makes an abrupt bend, and, joined by two tributary streams, it runs in a direction nearly north into the Straits of Carquinez. Those straits are not by name laid down upon the map, but the creek is represented as falling into what are inscribed

"Esteros." The topographical map exhibited in the cause shows the creek, at or near the point where the diseño represents it as falling into or becoming an estero, enters a salt marsh, through which it pursues a somewhat sinuous course to the straits. The "Arroyo del Hambre" is also laid down upon the map, but it is represented as flowing from west to east, nearly at right angles to the course of the other streams, and as falling into the esteros at a short distance from the mouth of the Nueces. The tract delineated thus assumes nearly the shape of an inverted triangle—the Nueces curving around its lower extremity as has been described, and forming the two legs of the triangle, while the Del Hambre, running from west to east, forms its base. It is found, however, that the draughtsman of the diseño, though he has correctly laid down the courses of the streams on the east and west, has wholly mistaken that of the Del Hambre. The latter stream rises in the hills on the west not far from the source of the Nueces, or Reliez creek, as it is called, and flowing in an opposite direction, and in a course nearly due north, falls into the straits at a considerable distance to the west of the mouth of the Nueces. The Del Hambre, therefore, cannot serve as a northern boundary. If admitted as a boundary at all, it will form a portion of the western boundary, the northern boundary being the Straits of Carquinez.

Under these circumstances, it is contended on behalf of the claimants of the Rancho Cañada del Hambre that the northern boundary of Las Juntas, as called for in the papers, not being found to exist in nature, must be disregarded, and the quantity called for must be surveyed within the other lines; that if the straits had been intended as a northern boundary, they would have been mentioned in the papers, or in some manner referred to; that as the northern boundary called for in the papers cannot be found, the court must fix an imaginary line, enclosing the proper quantity between it and the other natural boundaries; that the tract is described as surrounded by arroyos, whereas it has arroyos only on three sides of it, and the fourth side must of necessity be bounded by an imaginary line, so as to include the required quantity.

It will be perceived that all these propositions rest upon the hypothesis that the intention of the grantor was to fix a northern boundary for the tract, and that he designated the Del Hambre solely because he supposed it to flow in the direction represented on the diseño, and across the land so as to form a northern boundary. If such was the predominant idea in the governor's mind, it might, with much reason, be urged that, as the brook cannot serve as a northern boundary, the call for it must be rejected, and the northern line be determined by quantity, or by drawing a line corresponding in position and direction to the supposed course of the Del Hambre. But, on the other hand, it may well be supposed that the intention of the grantor was to adopt certain well known and natural objects as the limits of the tract; and though, in the rude sketch submitted to him, the position and course of one of the brooks may have been erroneously laid down, yet his intention was to extend to that brook wherever it might, in fact be found. The Arroyo del Hambre is described by all the witnesses as publicly and notoriously known by that name since 1808. It derived its name from the circumstance that a body of Spanish soldiers, encamped near it, underwent in that year, much suffering from hunger. The same name was applied to the Bolsas, towards its upper waters, and to the cañada, or narrow valley of level land through which it flows as it approaches the straits. This Cañada del Hambre is represented on the diseños of the ranchos on the east and on the west, where its position and course are indicated with considerable accuracy. The grants for both of these ranchos are of older date than that for Las Juntas—one having been issued in 1834, and the other (Pinole) in 1842. It may therefore be supposed that the governor was not unacquainted with the true course and position of the Del Hambre. That the brooks were "known" appears from Jimeno's report, in which it is stated that the place is "surrounded by known arroyos,"—an observation which is cited by the counsel for the Soto claim as indicating that Jimeno must have supposed the Del Hambre to flow across the tract from west to east, so as to join its northern boundary, but which appears to me equally accurate and natural, if Jimeno had been acquainted with the true course of the stream, and knew that the land solicited was bounded on three sides by known arroyos, and on the fourth by the straits. It is not pretended that the lands of Martinez extended further east than the Cañada or Arroyo del Hambre: and yet throughout the whole proceedings in the case of Las Juntas, from the petition of the alcalde in 1832, down to the grant, the rancho of Martinez is mentioned as one of its boundaries. The alcalde, who in 1832 conceded to Welsh two leagues, by way of loan, states the lands loaned by him lay between the two brooks, the Nueces and the Del Hambre; and the proofs show that so early as ———, Welsh built a corral, and employed Vaqueros, who resided on the Del Hambre, at a short distance from its mouth. All the witnesses concur in the statement that the Del Hambre was universally recognized as the boundary between the two ranchos, and that Welsh, though his house was built further south, and at the lower part of the tract, always claimed to that stream. The attempt made to identify the Arroyo del Hambre of the diseño with Dry creek is wholly abortive. For, independently of the overwhelming mass of testimony, which establishes beyond doubt what creek was known, from a very early period, by the

name Del Hambre, the diseño itself represents Dry creek in its true position; and by the name "Arroyo Seco," which, translated, it still retains. It is also to be noted that neither the concession nor the grant call for the Del Hambre as a northern boundary. Those documents merely describe the land as bounded by the Arroyo de las Nueces and by that of Del Hambre. It is only by referring to the petition, the informes, and the diseño that we discover that that arroyo was supposed to be a boundary on the north. It has, for these reasons, seemed to me wholly inadmissible to construe the grant as intended to designate the Del Hambre as a northern boundary; and, if it cannot form such a boundary, to reject a call altogether. On the contrary, it should be construed in accordance with the universal understanding of the colindantes and neighbors from a period antecedent to the date of the grant, as calling for the Del Hambre creek and the lands of Martinez as boundaries, notwithstanding that the course and position of the creek may have been erroneously represented on the diseño.

The next inquiry is whether the right of the claimants of Las Juntas to select the three leagues granted within the exterior limits of the tract has been modified, and ought now to be controlled by the alleged grant to Teodora Soto. It may be admitted that if the Mexican government have within the exterior limits of the grant to Welsh, ascertained and cut off a sobrante or excess beyond the quantity granted, and have granted this sobrante by metes and bounds, or by other adequate description, the sobrante grantee would have the right now to insist that Las Juntas should be so measured as not to include the tract subsequently granted to himself. But the inquiry whether such a grant was, in fact, made, was had in a suit between the claimants under the Soto grant and the United States. The claimants of Las Juntas were not permitted to intervene for the protection of their rights, and have not been heard. The 15th section of the act of 1851 declares that the final decrees in this class of cases shall be conclusive only as between the United States and the claimants, but shall not affect the interests of third persons.

It is evident that the claimants of Las Juntas are "third persons," and that their interests would be seriously affected if the confirmes of the Soto grant are permitted to deprive them of the right of locating their grant so as to embrace the most valuable land within its exterior limits. I proceed, therefore, to inquire, notwithstanding the decree of confirmation, whether, as between the claimants of the Las Juntas and those of the Cañada del Hambre, the latter have, by virtue of a valid grant of the sobrante, the right to control the election of the former as to the location of the tract. The expediente in the Soto case discloses that on the 4th of May, 1841, Teodora Soto presented a petition, in which she stated that about four years before, her deceased husband, Barcenas, had obtained a provisional grant for the Cañada del Hambre, and had placed numerous cattle upon it; that soon after a fire compelled him to remove from the place, and that shortly afterwards he died. She therefore asked a grant of the land, even though it be provisionally, and until she can present a sketch of it. On the 4th May, 1842, José Castro, the ex-prefect, certifies that in 1839 he granted the land to Barcenas provisionally, and that the expediente ought to be amongst the papers of the prefecture. On the 6th of May, Estrada, the then prefect, certifies that the expediente is not found in his office. On the 8th May, the governor orders that a provisional grant issue. The petitioner presents a map, etc., subject to the usual reports.

There is no reason to doubt the genuineness of these documents. They are found in the archives, and bear every mark of authenticity. There was also produced by the claimants a translation of an alleged grant, dated December 14th, 1841, to Teodora Soto, of the Cañada del Hambre, "not to exceed three leagues of that which shall be left over after the ranchos of Welsh and Martinez shall have been measured." This document, it was alleged, was delivered by the claimant to M. G. Vallejo, who caused it to be translated. Vallejo swears to the genuineness of the original, and he and Frisbie to its loss. The translator swears to the accuracy of the translation. Proofs were also adduced to show occupation of the land by Soto from a period anterior to the date of the grant. The decision of this court was rendered at a time when the completeness and value of the archives, both as negative and positive proofs, were imperfectly understood; nor had the court then become aware how unreliable, in most instances, is the parol proof offered in support of grants of which the archives contain no trace. As the genuineness of the expediente was not questioned, it was not considered by the court most probable that a grant was in fact issued in accordance with the governor's order, and that he might have deemed the rights of the colindantes, Welsh and Martinez, sufficiently protected by directing the three leagues to be taken only out of the sobrante which should result after the adjoining ranchos were measured. Under this view, it was supposed that the translator had mistaken the date of the grant, and that it in fact issued in 1842, after the date of the governor's order of May 8th, of that year. The grant intended to be confirmed was therefore a supposed grant, dated subsequently to May, 1842; but by some oversight the decree refers to and confirms the alleged grant of 1841.

That no grant could have issued at that date is evident:

1. No petition or document whatsoever, relating to such a grant, is found in the archives.

2. None was believed to exist; else, why consult Estrada as to a previous provisional concession by a prefect?

3. Teodora Scto's own petition of May, 1842, asking for a concession of the Cañada del Hambre, even "tho' it be provisional," negatives the idea that she already had an unconditional grant for the same lands; as does also her reference to a supposed provisional concession to her husband, some four years before, and her entire silence as to an absolute grant to herself, made less than five months before the date of her petition.

· 4. The governor, if he made the grant of 1841, must be supposed to have granted the sobrante of two ranchos, for neither of which a title in full property had as yet issued; and this without any evidence that the limits of those ranchos contained a sobrante of three leagues, or any other quantity.

5. The subsequent grants of Pinole and Las Juntas omit all mention of the alleged previous grant of the Cañada del Hambre, although the Pinole grant calls for the cañada as one of its boundaries, and the Las Juntas is bounded by the Arroyo Del Hambre. In the latter grant the governor is at pains to declare that it is without prejudice to the boundaries of Pacheco, Juana Sanchez, Moraga or Martinez, but he does not mention Teodora Soto, who is alleged to have obtained her grant two years previously.

For these and other reasons that might be adduced, I think it proved beyond a doubt that no grant could have issued at the date mentioned by Vallejo. It may be said, however, that a grant may have issued in 1842, and that the translator has made a clerical error in copying it. But this hypothesis appears inadmissible. In the document presented not only is the date (December 14th, 1841) attached, but a translation is given of the habilitation at the top of the page, by which it appears that the paper was habilitated for the years 1840 and 1841. It would seem, therefore, that there could have been no mistake in the translation. That no such title could have issued before June 2d, 1842, the date of the Pinole grant, may be inferred from the fact that that grant makes no mention whatever of the Cañada del Hambre rancho, though the cañada itself is referred to as a boundary. On the 8th of June a grant is made for the Rancho Boca de la Cañada del Rinole, bounded by the ranchos of Welsh, Martinez, and Velencio; but without reference to any rancho of Soto, though it appears that she was the daughter-in-law of the grantee, and then residing on the Rancho Boca de la Cañada del Rinole. And finally, when, in 1844, Las Juntas was granted to Welsh, without prejudice to the ranchos of his neighbors, some of whom are expressly mentioned, all reference to any previous grant to Soto is omitted.

It has already been shown that the grant of 1841, relied on by the claimants, and the only one as to which proofs were offered, could not have been issued. It has been shown that the paper which was translated must have been dated in 1841, for it is impossible to suppose that the translator would not only have mistaken the date, but the purport of the printed habilitation at the head of the paper, which shows it was made for the bienno 1840 and 1841. The grant, therefore, which was translated, must have been a forgery. Gen. Vallejo and Frisbie are the only witnesses who testified to having seen it. The direct proof of its genuineness consists of the statements of Gen. Vallejo alone. It follows that if any grant did issue subsequently to the date of the governor's order of May 8th, 1842, it has not been produced, nor has any evidence been taken to prove its existence. The hypothesis, therefore, of a grant in 1842, is an assumption wholly unsupported by proofs. The proceedings of the government with regard to the three other ranchos which have been referred to, and especially with regard to Las Juntas, render it highly improbable that up to 1844, the date of the latter grant, Teodoro Soto could have been known as a colindante of either. But there is found in the records of the former government evidence which I cannot but regard as decisive of the fact that no grant could have been issued to Teodora Soto. On the day on which the title for Pinole issued, a communication was addressed to the justices of the peace of Contra Costa, by Estrada, the prefect, in which he informs him that on that day he had received a dispatch from the secretary of state, notifying him that a title had been issued to Martinez for El Pinole, with all the lands pertaining to it, and ordering that the justices of the peace for San José, Contra Costa and San Francisco be informed of the order, that they may make it known to those in the neighborhood, and particularly to Teodora Soto, who is to be informed that the pretension she has made to occupy the Cañada del Hambre is not admissible, because it pertains to Pinole. The genuineness of this document seems indisputable. It is traced to the possession of Estudillo, at that time alcalde of the district in which the land lay, and the borrador or office copy of the dispatch from the secretary to Estrada is found in the archives. It proves what was the final result of Teodora Soto's application of May, 1842, and definitely establishes that her petition was rejected.

It is unnecessary to do more than refer in general terms to the mass of testimony which disproves the statement of Vallejo that Teodora Soto occupied the cañada from the year 1829. In 1845 and 1846 she was living at the rancho of Boca del Pinole, the home of her mother-in-law, where she put up the walls of an adobe. This she would hardly have done if she owned three leagues in the immediate neighborhood. Several witnesses, who have long resided in the cañada

or its vicinity, testify that they have never heard of any claim of Teodora for lands in the Cañada del Hambre. Another witness deposes to a declaration of Teodora that she had no land. And numerous witnesses testify that she went to the cañada for the first time in 1847. If to this be added the fact that in her deed to James she describes the grant as for one league, in her petition to the board as for two leagues, while in her deed to Vallejo no description whatsoever is given, together with the fact that Vallejo, when testifying before the board, was directly interested in the claim, it cannot, I think, be doubted that Teodora Soto never obtained a grant from the Mexican government. The claimants of Las Juntas, being thus found to have the right to elect the quantity granted within the exterior limits, without regard to the alleged grant to Teodora Soto, it remains to be considered whether that right has been properly exercised. The rancho was, in 1850, surveyed under the direction of the claimants, and the exact quantity of three leagues was located so as to extend from the Las Juntas to the straits, and embracing all the land between Arroyos del Hambre and Nueces, from the mouth of each of those streams up to a point on the Del Hambre, some two miles from the town of Martinez, from which point a line was measured in a southeast direction to Arroyo de las Nueces, so as to include the house of Welsh, and to leave the sobrante or excess not included on the southwesterly side, bordering on the Reliez creek, and contiguous to the lands of Moraga. This survey was recognized and adopted in the decree of the probate court of Contra Costa county, by which the lands of William Welsh were divided amongst his heirs. Nearly all the lands thus included have been sold by the claimants of Las Juntas; the first sales having been made so far back as 1849 of lots in the town of Martinez, situated at the mouth of the Arroyo del Hambre. The aggregate amount received by the claimants on these sales exceeds the sum of $66,000. On the lands so sold, especially those near the town of Martinez, the purchasers have made improvements to the value of more than $100,000. The land excluded from this survey, and admitted by the claimants to be public land, has been in great part taken up as public land by settlers, who have made improvements thereon to the value of $25,000. These lands are included in the official surveys. It is also shown that since the survey of 1850, the claimants have uniformly declared that they claimed no land outside of that survey.

It thus appears that the claimants have, in the most emphatic and solemn manner, made their election of the three leagues granted to them; that important interests have grown up and large expenditures on the faith of that election, not only by the purchase and improvement, at great expense,

of lands within the survey, but by the settlement and improvement under the laws of the United States, of lands without it. No objections to the location of the grant thus elected by the claimants of Las Juntas are suggested on the part of the United States, or of the owners of the adjoining ranchos, except, of course, the claimants under the confirmation to Teodora Soto. As the latter, for the reasons already given, cannot be heard, there seems no reason why the important interests which have vested under the location adopted by the claimants at so early a date, should now be disturbed. I think, therefore, that the official survey of Las Juntas should be rejected, and the land surveyed in accordance with the claimants' survey of 1850.

The objections to the official survey of El Pinole remain to be considered. It appears from the expediente that in August, 1834, Martinez presented a petition to the commissioners on colonization, setting forth that in 1823 he had obtained a grant for the place called "Pinole y Cañada del Hambre," and that he had lost or mislaid it. The commissioners recommended that the papers be returned to him, that he may make his application in due form. The same proposition was presented to the departmental assembly. In the report of the committee on colonization and vacant lands, it is noticed that Martinez had represented to them that he was in possession of the place called Pinole and Cañada del Hambre, along the Straits of Carquinez; that he had lost or mislaid the title issued to him by Arguello, in 1832. They therefore propose "that the papers be returned to him, that he may present the same in due form." This report was approved by the assembly. On the 10th November, 1837, Martinez presented his petition to the governor, setting forth that in 1823 El Pinole was granted to him, but that the paper had long since been lost or mislaid; that he was therefore obliged to present a second petition for the place already solicited, being three leagues, but that now, from the increase of his cattle, it was necessary that there should be granted to him one sitio more, so that he may have an extension of four leagues; that although this may appear considerable, yet the greater part is not fit for pasturage, being composed of rocky hills and swamps. "The better portion is on the side of the 'Siscar,' and the Cañada del Hambre," wherefore he asks that his petition be granted as charged by the supreme government in the annexed document. The document annexed is an order from the president of Mexico, directing the governor to grant to Martinez the lands solicited. On the 25th December, 1837, the governor refers Martinez' petition to the ayuntamiento of San Francisco, reminding them that the petition is for four leagues. On the 10th September, 1838, the ayuntamiento reported favorably to the petition for a grant of four leagues. On the 1st June, 1842, the gov-

ernor makes his decree of concession in which he declares Martinez owner of the place called "El Pinole," having for limits the mouth of the Cañada del Pinole, thence eastwardly with the same to the Corral de Galinde, from this point to the Cañada del Hambre, and along it (por ella) to the Straits of Carquinez, and terminating at the mouth De la Cañada del Pinole on the Bay of San Francisco. The final title issued on the same day. It describes the land in the same terms as the decree of concession. The third condition declares its extent to be four square leagues, a little more or less, as explained on the diseño, and it directs the magistrate who shall give the possession to cause it to be measured, reserving the surplus to the nation for its convenient uses. On the same day the communication heretofore referred to was addressed to the justice of the peace of Contra Costa and San Francisco, directing that Teodora Soto be informed that the pretensions to the Cañada del Hambre were inadmissible, as the land belonged to Martinez. The decree of confirmation describes the boundaries precisely as they are given in the grant. No quantity is specified, but the usual reference, for greater certainty, is made to the map and expediente, and to the deposition of W. A. Richardson. It is contended that the grant is by metes and bounds, and that all the land within the exterior limits should be surveyed to the claimants. But this claim seems to me wholly inadmissible. It had never been considered by this court, that when the grant mentioned a certain quantity of land, adding the words "poco mas ó menos,"—"a little more or less,"— any greater excess over and above the quantity specifically mentioned could pass than a mere fractional part of a league, which was the common unit of measurement. Such seemed the reasonable, though, of course, somewhat arbitrary, interpretation of the phrase alluded to, and such an operation was attributed to it in those cases only where all the exterior boundaries were well defined, and where the proceedings showed that the governor intended to grant all the land within the limits specified, and where it appeared that the quantity within those limits exceeded the number of leagues mentioned only by such an excess as might reasonably be deemed to have been contemplated and provided for by the introduction of the words "poco mas ó menos." But this view was held by the supreme court to be erroneous, and the words "poco mas ó menos" were entirely disregarded, as "having no place in a system of surveys like the American." The quantity embraced within the exterior limits of El Pinole is about seven leagues,—nearly twice the quantity mentioned in the grant. It is plain, then, that neither the previous ruling of this court nor the decisions of the supreme court would authorize the confirmation of this claim for a greater quantity than four leagues.

It is said that the case of U. S. v. Rosa Pacheco [22 How. (63 U. S.) 225], is an authority for the confirmation of the whole tract; but the cases are essentially different. In that case, not only were all the boundaries distinctly mentioned, but the governor was informed by the petition and by the reports of the informing officers (by whom testimony was taken as to the extent of the land) that the tract solicited was two leagues in length by about two leagues, or little more or less, in width. With this information he proceeds to grant "the tract solicited," specifying all its boundaries; and the grant in that form was approved by the departmental assembly. In making out the title, however, the draughtsman, it would seem, by a clerical error, mentioned in the condition that the land was of the extent of two leagues. The supreme court held that all these circumstances showed an intention to grant a tract of the dimensions reported to the governor, and confirmed the tract to four leagues. But in this case all the proceedings show that quantity, and not boundaries, was the prominent idea in the governor's mind and in that of the grantee. The petition, as we have seen, states that the former grant, which had been lost, was for three sitios, but that he now asks for an additional sitio; that its extent asked for may seem large, but that the greater part is unfit for pasturage, etc. In his order of reference to the ayuntamiento, the governor is careful to remind them that the quantity solicited is four leagues. In the report of the ayuntamiento, the quantity of four leagues is again referred to; and, finally, in the grant, the extent of land granted is again specified as four leagues, "a little more or less," and it is ordered to be measured, the surplus to remain to the nation for its convenient uses. It will be perceived that this case is almost the converse of that of Rosa Pacheco, for here the intention to ask for and to grant a definite quantity of land is apparent throughout the whole proceedings. To permit, under such circumstances, a tract of land, of nearly double the extent solicited, to be taken from the public domain, seems to me wholly inadmissible. The decree of the board does not restrict the confirmation to any specified quantity; but, in their opinion, the deposition of Richardson is referred to as showing that there are not more than four leagues in the grant. The omission, therefore, to restrict the confirmation to the quantity mentioned in the grant is evidently due to the reliance placed on the erroneous statement of Richardson, the claimant's own witness, as to the extent of land included within the exterior limits.

I think it clear that the claimants are only entitled to four leagues of land, to be located within the exterior limits of the grant at their election. For the reasons already assigned with regard to Las Juntas, the election of the claimants of El Pinole cannot now be controlled by the representatives of

Teodora Soto. The exterior boundaries, within which the election is to be made remain to be considered. The only serious question appears to be with regard to the eastern boundary. The boundaries mentioned in the grant are: the mouth of Cañada del Pinole, thence eastwardly with the same to the Corral de Galinde, and from this point to the Cañada del Hambre, and along or through it ("por ella") to the straits, and terminating at the mouth of "El Pinole." It is urged that by the terms of the grant, and from the language of the petition, it is plain that the land was bounded by, but did not include, the Cañada del Hambre. In the last act of the expediente given in the printed brief filed by the counsel for Teodoro Soto the petition is translated so as to read that: "The extent of land solicited appears large; but the greater part is not fit for pasturage, being composed of stony hills and marshy lands. The last sitio solicited lies in the direction of the Siscar and Cañada del Hambre, which is the place the cattle most resort to, as is known to all the neighbors." But this translation is evidently inaccurate. Martinez makes no mention of the last sitio. He says the quantity of land may appear too great; but the greater portion is unfit for pasturage. The best part is on the side of the Siscar and Cañada del Hambre, etc. The petitioner had already mentioned that his last grant from Arguello had been for three leagues, "which were the Cañada del Pinole and that called 'Del Hambre,' on the Straits of Carquinez, and looking toward the Bay of Sonoma, as far as the mouth of the Cañada Pinole," as shown by the accompanying map. This same land he again solicits, with the addition of another sitio. On the map, the Cañada del Hambre is distinctly represented, and its name inscribed upon it. That the sitios first granted included that cañada is expressly stated in the petition, and it is also stated that owing to the loss of his document he is obliged to present a new petition for the same place. The excuse assigned for asking for the large quantity of four leagues is that the greater portion is unavailable, the best part being on the side of the Siscar and the Del Hambre. It is plain that he could not have intended to exclude from his application lands embraced in his previous grant, and which he specifies as the best part of the tract solicited in his second application. The grant has been translated as bounding the lands by the Cañada del Pinole, thence eastwardly with the same to the Corral de Galinde, thence to the Cañada del Hambre, thence to the straits, and thence to the mouth of the Cañada del Pinole. But, in fact, the grant does not call for the cañada as a boundary on such terms as would exclude it. The language is, "from that point (i. e. the Corral de Galinde) to the Cañada del Hambre, and through it or along it to the straits,"—precisely the same expression as is used with reference to Cañada del

Pinole, which is on all hands admitted to be included in the grant.

Looking at the terms of the grant alone, I can see no reason why both cañadas must not be excluded if either be, for both are mentioned as boundaries, and the line is said to run with respect to each, "por ella" or por "la misma." But even if the intention of the petitioner or that if the governor were doubtful, the document issued on the same day, in which it is ordered that Teodora Soto be informed that her application for the Cañada del Hambre is inadmissible, as that that cañada belongs to Pinole, would seem to be decisive. If, in addition, we consider that on the diseño of Las Juntas the Arroyo del Hambre is distinctly delineated as the boundary between the two ranchos, the lands to the west of it being inscribed "Terreno de Martinez," together with the fact testified to by all the witnesses that the Arroyo del Hambre was universally recognized as forming the common boundary line of El Pinole and Las Juntas, no doubt can, I think, be entertained, that portion of the Cañada del Hambre lying to the west of the arroyo was included within the exterior limits of the Pinole.

It is said that if any of the cañada be included all must be, and the adoption of the arroyo as a boundary is purely arbitrary. The cañada in question is a long and narrow valley, not exceeding, in average width, a few hundred yards. Throughout the greater part of its course the Arroyo del Hambre, after entering the cañada, flows along the base of the eastern hills, leaving by far the larger portion of the valley on the west of it. The adoption, therefore, of a well known object like an arroyo as the boundary would be most natural, as it left almost all the cañada to Martinez, and satisfied the call of his grant, which required him to run through it "por ella" to the straits. In the subsequent grant for Las Juntas, the arroyo is expressly designated as the boundary of the latter, and the line so fixed has been recognized and adopted from that day to this. It appears to me, therefore, that the claimants of Pinole have the right to locate four leagues of land at their election, within the exterior limits, as ascertained in this opinion, viz., the Cañada del Pinole, thence along or through it to the Corral de Galinde thence to the Arroyo del Hambre, thence to the straits, and thence along the bay to the mouth of the Cañada del Pinole. When their election shall have been made, the enquiry will still be open whether they have exercised their right conformably to the rules and principles by which the right of election, in such cases, is governed.